UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| C. ARMSTRONG<br><br>Plaintiff,<br><br>v.<br><br>U.S. LEGAL SUPPORT, INC.,<br><br>Defendant. | Index No. 22-3659<br><br>**COMPLAINT** |

When Plaintiff returned from a two-week FMLA leave, she requested reasonable accommodation in the form of travel limitations. Instead, she was directed to report to a new office further afield the very next day, and an even more distant location a few days later.

The same day that Plaintiff's subsequent request for intermittent FMLA leave was approved, she was reassigned to a new manager from out of state. Over the course of the next couple of months, Plaintiff was told that she was being promoted due to her excellent work record, and then Defendant fired her instead.

This an egregious case of FMLA retaliation and disability discrimination that must be swiftly remedied.

Plaintiff C. Armstrong ("Ms. Armstrong"), by and through her undersigned counsel Josh Bernstein P.C., alleges as precedes and follows. In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of this action.

**Nature of the Suit:**
**FMLA Violations and Retaliation**

1. Plaintiff brings suit under the Family and Medical Leave Act ("FMLA"), 29 USC § 2601 et. seq., and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101, et. seq.

**The Parties**

2. Plaintiff C. Armstrong is an adult U.S. citizen residing in the state of New York.

3. U.S. Legal Support is a nationwide court reporting and litigation support company with numerous locations in the State of New York and the five boroughs.

4. U.S. Legal Support employs well over 50 individuals within 75 miles of the location where Ms. Armstrong was employed. Ms. Armstrong worked well over 1,250 hours during the 12 months prior to her taking of FMLA leave.

**Ms. Armstrong Successfully Discharges Her Duties**

5. Ms. Armstrong began working for Defendant as a full-time Client Solutions Analyst on September 3, 2019.

6. Ms. Armstrong worked out of Defendants' Brooklyn location at 300 Cadman Plaza West. This office is a short commute from Ms. Armstrong's residence.

7. Defendant provides all-inclusive support services for depositions. They supply conference room space, court reporters, interpreters, and other amenities.

8. Ms. Armstrong's job was to coordinate services for depositions and ensure the seamless operation of the support provided. She ensured that court reporters and videographers would arrive and set up in a timely fashion, that transcripts would get out on time, that refreshments were stocked and available, and coordinate billing, among other duties.

9. Ms. Armstrong excelled at her position both before and during the pandemic

10. On or about March 18, 2020, Ms. Armstrong began working from home.

11. Beginning on or about June 23, 2020, Ms. Armstrong was required to go back into the office at least twice a week for depositions, and worked from home the remaining days.

12. Defendant did not implement reasonable COVID-19 protection measures. Ms. Armstrong was not provided with a protective shield for her desk or protective shields in the deposition rooms until September 2020. There was no temperature check or requirement to test negative to enter the building. Ms. Armstrong received frequent email notices from the building about COVID-19 outbreaks in the building – which also housed an ENT clinic on the same floor as U.S. Legal – but Ms. Armstrong was required to continue coming into the office notwithstanding the occurrence of outbreaks. During this time-period, none of the upper management came back to their offices, and instead continued to work from home.

13. In July 2020, Ms. Armstrong received a positive annual review from her supervisor.

## Ms. Armstrong Falls Ill

14. On October 2, 2020, Ms. Armstrong felt extremely weak, dizzy, and fatigued, and sought medical treatment. The physician told Ms. Armstrong that she had elevated blood pressure and an accelerated heart rate, and believed that Ms. Armstrong was anemic. The

3

physician also informed Ms. Armstrong that anemia would make her more vulnerable to COVID-19.

15. Ms. Armstrong's physician instructed her to take two weeks off from work to recuperate. Ms. Armstrong supplied her doctor's note and request to Defendant and requested FMLA leave. She commenced leave on October 5, 2020.

16. On October 16, 2020, a Friday, Ms. Armstrong's physician informed her that the results of her bloodwork indicated she was anemic. He questioned Ms. Armstrong about her job duties and commute, and directed her not to travel extensively due to her anemia.

17. Ms. Armstrong's physician wrote a note the same day requesting that Ms. Armstrong not be required to travel extensively as a reasonable accommodation to her anxiety and anemia. Ms. Armstrong provided this note and request for accommodation to Defendant on her return-to-work date the following Monday, October 19, 2020.

**Defendant Immediately Does the Precise Opposite of what the Doctor Ordered**

18. Ms. Armstrong discovered that she had been locked out of her work computer when she tried to log on the morning of October 19, 2020. When she asked IT for help, she was told that someone from HR would have to provide authorization for her to begin work that day. Ms. Armstrong was not provided access until noon that day.

19. The very next day, Ms. Armstrong's manager asked her to travel to the Manhattan office at 90 Broad Street, a location Ms. Armstrong had never been to before.

20. On November 3, 2020 (election night), Ms. Armstrong's supervisor called Ms. Armstrong in the evening and asked her to go to a colleague's home to pick up a key for the Bronx office and to go attend a deposition there the next morning, which would have entailed a nearly two-hour commute each way.

4

21. Ms. Armstrong reminded her supervisor of her request for accommodation and informed her that she could not travel to the Bronx. Her acting supervisor became irate, culminating with her supervisor abruptly hanging the phone up on Ms. Armstrong after stating that she would tell the Director of Operations about Ms. Armstrong's refusal to violate her Doctor's orders.

### Defendant Retaliates Against Ms. Armstrong.

22. Shortly after Ms. Armstrong returned to work, her supervisor began to closely scrutinize her whereabouts, and reprimanded her for following procedure as she had been trained to do.

23. On or about November 9, 2020, Ms. Armstrong received a strange call from one of the NYC HR managers who told her that she was calling to "check-in" and see if there was anything Ms. Armstrong wanted to "talk about". It was clear from the context that this call was in response to Ms. Armstrong's inability to travel to the Bronx office the prior week due to the restrictions imposed by her physician.

24. Ms. Armstrong explained that she was anemic and informed this individual of her prior accommodation request (which Defendant had ignored completely).

25. On November 17, 2020, Ms. Armstrong received notice that she was approved for intermittent FMLA leave on an ongoing basis.

26. That same day, Defendants informed Ms. Armstrong that she would be reporting to a new manager, who was based in Florida.

27. Ms. Armstrong spoke with her new supervisor by phone. During the call, Ms. Armstrong informed her new manager that she had been approved to take a Thanksgiving

vacation back in September, and created a calendar invite for her new manager noting the days she would be out for her convenience.

28. Two days later, Ms. Armstrong received an email from Defendant's FMLA administrator confirming the prior approval of her request for intermittent FMLA leave. This administrator cc'ed Ms. Armstrong's former supervisor on the email.

29. Later that evening, Ms. Armstrong's former manager called Ms. Armstrong and told her that she would not be able to take her Thanksgiving vacation and that she had informed Ms. Armstrong's new supervisor as such.

30. The rationale Ms. Armstrong was provided is that another colleague also wanted those days off. Ms. Armstrong explained that her days off had been approved in September, whereas the other colleague did not even make her request until October, but to no avail.

31. Ms. Armstrong was ultimately permitted to take her previously-approved Thanksgiving vacation. However, her former manager texted and called Ms. Armstrong repeatedly over the holiday, asking her to work on two of her scheduled days off. Ms. Armstrong declined, but her former manager kept persisting, and Ms. Armstrong complained to human resources.

**Defendant Tells Ms. Armstrong She is Being Promoted, and Instead Fires Her**

32. By the end of December 2020, the company had restructured, and Ms. Armstrong and two of her colleagues now joined the nationwide team of Client Solutions Analysts, working with colleagues across the country while still going into the office for depositions every week.

33. On or about February 5, 2021, Ms. Armstrong's supervisor and the Director of Southeast Operations informed her that she was being promoted to a position that would be fully remote on a team that included some of her Brooklyn office colleagues. Ms. Armstrong was informed that she was being selected for promotion based on her excellent work performance and that there would be plenty of growth opportunities in this new role.

34. On February 21, Ms. Armstrong began feeling symptoms of her anemia. She requested February 26, 2021 off to visit her physician, but her request was ignored.

35. On February 22, 2021, Ms. Armstrong learned that there had been a meeting to discuss the new roles and department, but she had not been invited. Later that afternoon, she was deleted from the new department Microsoft Teams chat and replaced with another colleague.

36. On February 25, 2021, Ms. Armstrong was fired.

## First Cause of Action:
## Interference With FMLA Rights

37. Plaintiff repeats and realleges the allegations contained in paragraphs 1-35 inclusive as if they were fully set forth herein.

38. The aforesaid actions of the Defendant constitute a violation of the Family and Medical Leave Act, 29 USC § 2601 et. seq..

39. As a result of Defendant's violation of the FMLA, plaintiff has suffered and continues to suffer economic losses and other pecuniary damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and liquidated damages.

**Second Cause of Action:**
**Discrimination for Opposing FMLA Violations**

40. Plaintiff repeats and realleges the allegations contained in paragraphs 1-35 inclusive as if they were fully set forth herein.

41. The aforesaid actions of the Defendant constitute discrimination under the Family and Medical Leave Act, 29 USC § 2601 et. seq..

42. As a result of Defendant's violation of the FMLA, plaintiff has suffered and continues to suffer economic losses and other pecuniary damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and liquidated damages

**Third Cause of Action:**
**Disability Discrimination Under the NYCHRL**

43. Plaintiff repeats and realleges the allegations contained in paragraphs 1-35 inclusive as if they were fully set forth herein.

44. The aforesaid actions of the Defendant constitute a violation of the New York City Human Rights Law, New York City Administrative Code § 8-101 et. seq..

45. As a result of Defendant's violation of the New York City Human Rights Law, Plaintiff has suffered and continues to suffer economic losses, mental anguish, pain and suffering and other damages. Plaintiff is also entitled to and demands an award of attorney's fees, costs, interest and, because Defendant's actions were willfully or wantonly negligent or reckless of Plaintiff's rights, or consciously disregarded Plaintiff's rights, punitive damages.

**Punitive Damages**

46. Because Defendants' actions were willful, unlawful, malicious and intentional, and/or negligent or reckless as to Plaintiff's rights, Plaintiff hereby demands punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff C. Armstrong prays for the following relief: Judgment against Defendant awarding damages in an amount to be determined at trial including economic damages, compensatory damages, lost wages, treble and/or liquidated damages, penalties, civil penalties, punitive damages, costs, interest, attorney's fees, and an award of such other and further relief as the Court deems just and proper.

Dated: June 21, 2022

                                                                      Josh Bernstein, P.C.
*Counsel for Plaintiff*

By:_____/s/_____
Joshua Alexander Bernstein

188 Grand St., 2nd Fl.
New York, NY 10013
(646) 308-1515
jbernstein@jbernsteinpc.com